AO 106 (Rev. 04/10) Application for a Search Warrant

# United States District Court
### for the
### Western District of New York

FILED
JUN 21 2017
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

A BLACK LG CELLULAR TELEPHONE SEIZED FROM
MARQUEE S. HICKS BY THE ELMIRA POLICE
DEPARTMENT ON MARCH 9, 2017.

Case No. 17-MJ-4079

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property located in the Western District of New York *(identify the person or describe the property to be searched and give its location)*:

**A black LG cellular telephone seized from Marquee S. Hicks by the Elmira Police Department on March 9, 2017, as described in Attachment A.**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**See Attachment B, Particular Items to be Seized, all of which are fruits, evidence and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 924(c)(1)(A)(i).**

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: **Title 21, United States Code, Section 841(a)(1) (possession of a controlled substance with intent to distribute) and Title 18, United States Code, Section 924(c)(1)(A)(i) (carrying a firearm during and in relation to, and possession of a firearm in furtherance of, a drug trafficking crime).**

The application is based on these facts: *See* **attached affidavit.**
- ☒ continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*S/A Stacey L Hull*
Applicant's signature

ATF Special Agent Stacey L. Hull
Printed name and title

Sworn to before me and signed in my presence.

Date:   June 21, 2017

*Marian W Payson*
Judge's signature

HONORABLE MARIAN W. PAYSON
United States Magistrate Judge
Printed name and Title

City and state:   Rochester, New York

<u>**ATTACHMENT A**</u>

<u>**DESCRIPTION OF PROPERTY TO BE SEARCHED**</u>

The property to be searched is a black LG cellular telephone, bearing the company symbol of Tracfone, which is currently being stored in the evidence room at the Elmira Police Department (EPD) inside a clear plastic evidence bag bearing an EPD evidence label with blotter number EC-006145-17, bar code number EC0130517008, case number EC-01305-17 and item number 8.

This warrant authorizes the forensic examination of the above-described cellular telephone for the purposes of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### SCHEDULE OF ITEMS TO BE SEIZED

All stored content related to the illegal purchase, possession or trafficking of narcotics, including content tending to prove relationships between co-conspirators or any acts furthering a narcotics trafficking conspiracy for the time period from January 1, 2017, through and including March 9, 2017, specifically:

    (a)    Logs of incoming and outgoing telephone calls, and any information associated with those calls, including but not limited to, telephone numbers, the time of the call, the date of the call, the duration of the call, and the name or other identifying information for the other party to the call;

    (b)    Logs of missed telephone calls, and any information associated with those calls, including but not limited to, telephone numbers, the time of the call, the date of the call, the duration of the call, and the name or other identifying information for the other party to the call;

    (c)    Contact lists and address books, including names, addresses, telephone numbers, and other identifying information;

    (d)  Incoming and outgoing text messages;

    (e)  Appointment calendars;

    (f)  Voicemails; and

    (g)  Photographs and/or videos.

*1 7-mj· 4079*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

State of New York    )
County of Monroe     )        SS:
City of Rochester    )

      **STACEY L. HULL**, being duly sworn, deposes and states:

### INTRODUCTION AND AGENT BACKGROUND

    1.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) of the United States Department of Justice.  As such, I am a "[f]ederal law enforcement officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States and thereby authorized to request the issuance of federal search and seizure warrants.

    2.     I am currently assigned the ATF office in Rochester, New York Field Office.  I am a graduate of the Criminal Investigator School and the ATF National Academy, both located at the Federal Law Enforcement Training Center in Glynco, Georgia.  I have been employed as an ATF Special Agent for approximately one year.  As part of my professional experience, I have participated in several state and federal investigations involving the illegal possession and trafficking of firearms and narcotics.  Previously, I was employed by the Town of Gates Police Department in Rochester, New York, for approximately six years.  I earned a Masters of Arts Degree in Forensic Psychology from the Chicago School of Professional Psychology in 2014.  I also received both a Bachelor's Degree in Psychology and Criminal Justice from Roberts Wesleyan College in 2009.  I have participated in the service of state and federal search and seizure warrants, and have seized or assisted in seizing contraband, including narcotics, firearms, and ammunition, as well as cellular telephones and electronic devices, and documentary evidence.

3.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – specifically, a black LG cellular telephone, bearing the company symbol for Tracfone on the outside, described in Attachment A (hereinafter, "**Subject Cell Phone**") – which is currently in the possession of the Elmira Police Department (EPD), and the extraction from that property of electronically stored information described in Attachment B.  The **Subject Cell Phone** is currently being stored in the evidence room at the EPD (317 East Church Street, Elmira, New York) inside a clear plastic evidence bag bearing an EPD évidence label with blotter number EC-006145-17, bar code number EC0130517008, case number EC-01305-17, and item number 8.

4.     The information contained in this affidavit is based upon my personal knowledge and information and belief, the sources of which are conversations with EPD officers who were personally involved in the investigation and arrest of MARQUEE S. HICKS, and a review and analysis of reports from the EPD.  Because this affidavit is being submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to obtain the requested search warrant.

5.     Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that MARQUEE S. HICKS has committed violations of 21 U.S.C. § 841(a)(1) (possession of a controlled substance with intent to distribute) and 18 U.S.C. § 924(c)(1)(A) (carrying a firearm during and in relation to, and possession of a firearm in furtherance of, a drug trafficking crime), and there is probable cause to search the **Subject Cell Phone** described in Attachment A for evidence, contraband and fruits of these crimes, as described in Attachment B.

<u>IDENTIFICATION OF PROPERTY TO BE SEARCHED</u>

6.      The property to be searched consists of the **Subject Cell Phone**, which was seized as evidence incident to the arrest of MARQUEE S. HICKS by EPD officers on or about March 9, 2017, and which has been securely stored and maintained in EPD custody since its seizure.

<u>FACTS ESTABLISHING PROBABLE CAUSE</u>

7.      On or about March 9, 2017, EPD officers were on patrol in the area of Walnut Street in the City of Elmira, New York.  EPD Officer Robert Raymond saw a Chrysler Sebring, bearing Pennsylvania Registration GVK6578, exit the driveway on the West 3rd Street side of 509 Walnut Street.  Officer Raymond knew that the premises at 509 Walnut Street is a known narcotics location. In addition, EPD officers had previously received information about a black male known as "Philly" who had menaced another individual with a black handgun at this location.

8.      Officer Raymond observed the Chrysler make a right hand turn to travel north on Grove Street from West 3rd Street, and relayed this information to EPD Officer Thomas Marsh. Officer Raymond then observed the Chrysler accelerate rapidly and was already near the intersection of West Clinton Street as Officer Raymond rounded the corner. Officer Raymond then saw the Chrysler swerve left into the southbound lane of Grove Street and stay in that lane for approximately a two-block distance. Officer Raymond was able to catch up to the vehicle as it passed Grove Park. Officer Raymond paced the vehicle at 40 miles per hour in an area where the posted speed limit is 30 miles per hour.

9.      After making these observations, Officer Raymond conducted a traffic stop of the Chrysler on Grove Street, just south of West Washington Avenue. Officer Marsh was directly behind Officer Raymond as the vehicle stopped.  As Officer Raymond approached the driver side of the vehicle, Officer Marsh went to the passenger side of the vehicle and saw a black male in the front

3

passenger seat. Officer Raymond asked the front seat passenger if he had any identification, and the male responded that he did not have identification, but would provide his name and date of birth. The male identified himself as MARQUEE S. HICKS, stated he was from Rochester, and provided a Rochester address. Officer Raymond asked the driver to step out of the vehicle to speak with him away from the passenger. Officer Raymond and the driver spoke behind the vehicle as Officer Marsh maintained visual contact of HICKS in the front passenger seat. Officer Raymond spoke to the driver who told him that he knew the front passenger only as "Philly."

10.    While Officer Marsh was maintaining visual contact of HICKS, Officer Marsh observed HICKS reach with his left hand towards his front waistline and grab an object that was under his hooded sweatshirt and near his front waistline. HICKS looked back to Officer Raymond as he was interviewing the driver. HICKS then let go of the object with his left hand and reached into his front right pant pocket with his right hand. HICKS then removed a clear plastic baggie that contained a large chunk of a white substance that resembled crack cocaine and placed this baggie on the floor of the vehicle between his seat and the passenger door. HICKS then reached back into the same pocket and removed another baggie that contained the same white substance and placed it on the floor. HICKS was watching Officer Raymond talk with the driver and did not appear to notice Officer Marsh standing near the vehicle.

11.    Officer Marsh notified Officer Raymond and requested that he respond to the passenger side of the Chrysler. Officer Marsh informed Officer Raymond that he saw HICKS place the baggies containing what appeared to be crack cocaine on the floor between the door and the seat. Officer Marsh opened the passenger side door of the Chrysler and Officer Raymond could see a clear-knotted baggie between the front passenger seat and the door jam. The baggie was partially under the seat. HICKS appeared nervous and began reaching around. Officer Marsh took control of HICKS' right hand and told him to place his other hand directly behind his back. HICKS turned slightly away

4

from Officer Marsh and his left hand was out of sight behind his body.  Officer Raymond then took control of HICKS' left hand.  Officer Raymond told HICKS to stop reaching and moving.  Officer Raymond then stated to HICKS "is it just the crack, this isn't worth getting anyone hurt over."  HICKS responded, in sum and substance, "No it's more than that bro."  Officer Raymond noticed that HICKS' arms tensed up.  Officer Raymond asked if Hicks had a gun on him and HICKS responded "yeah."  Officer Raymond asked if the gun was loaded and HICKS stated, "Yeah it is, just take it out."  Officers were able to secure HICKS in handcuffs as he was still seated in the front passenger seat with the seatbelt on.  Officer Raymond then removed a Beretta .40 caliber, Model 96D, semi-automatic handgun, bearing serial number BER027462M, from the front of HICKS' waistband.  The handgun was loaded with one live round in the chamber and nine additional rounds of ammunition in the magazine.

12.     A laboratory test conducted by the New York State Police, Western Satellite Crime Laboratory, on the white chunky substance recovered from the plastic baggies that HICKS placed on the floor of the Chrysler was positive for the presence of cocaine.  The aggregate weight of the cocaine was approximately 4.789 grams.

13.     After the arrest, Officer Marsh transported HICKS to the EPD where Officer Marsh read HICKS his <u>Miranda</u> warnings, which HICKS stated he understood.  While in the processing/intake area, HICKS told Officer Marsh that he saw his father get shot and killed while living in Philadelphia when he was 11years old and has carried a gun since the incident.  During a search at the EPD, $173 in cash and the **Subject Cell Phone** were recovered from HICKS' person.

14.     Based on my training and experience, and the training and experience of other experienced narcotics agents and investigators, I know that the above-referenced quantity of cocaine is consistent with street-level distribution.  In addition, I know that individuals involved in drug trafficking are often found in possession of significant quantities of cash, cellular telephones, and

5

firearms.  In fact, I know that courts in this Circuit have previously found that firearms are a tool of the drug trade.  Because HICKS was found with approximately five grams of cocaine, $173 in cash, a cellular telephone and a loaded firearm, I believe that he possessed the cocaine with the intent to distribute it to others.

15.     On or about April 28, 2017, the Honorable Marian W. Payson, United States Magistrate Judge, Western District of New York, signed a criminal complaint (Case Number 17-MJ-4040) charging HICKS with violations of 21 U.S.C. § 841(a)(1) (possession of cocaine with intent to distribute) and 18 U.S.C. § 924(c)(1)(A)(i) (carrying a firearm during and in relation to, and possession of a firearm in furtherance of, a drug trafficking crime).

## THE USE OF CELLULAR TELEPHONES BY DRUG TRAFFICKERS

16.     Through my experience, I am familiar with how cellular telephones are utilized by drug traffickers to engage in and facilitate illegal drug trafficking.  I know that cellular telephones are tools of the drug trade.  I have previously reviewed evidence obtained from searches of cellular telephones seized from members of drug trafficking organizations.  These searches have resulted in the recovery of significant evidence tending to show involvement in drug trafficking, including call logs showing contacts with co-conspirators, relevant text messages among co-conspirators and customers, contact lists and address books containing names and telephone numbers of co-conspirators and customers, and photographs of co-conspirators, firearms, drugs and large sums of money.

17.     Based on my training and experience, and participation in this and other narcotics investigations, I know that:

(a)     Narcotics traffickers often employ cellular telephones as a means of communicating with each other.  Narcotics traffickers often utilize cellular telephones to relay a variety of illicit

information including, but not limited to, telephone numbers of co-conspirators, digital codes to identify the caller, digital codes to indicate the location of a meeting place, purchase prices for the sale of narcotics, or other information designed to facilitate criminal activity.   Narcotics traffickers frequently maintain in the memories of their cellular telephones the names, telephone numbers, recorded messages, photographs and other items of information concerning themselves and their co-conspirators, meaning individuals associated in their criminal activities.   Narcotics traffickers commonly carry cellular telephones and other communication devices on their person, and utilize those cellular telephones and devices to further their narcotics trafficking activities.

(b)     People who illegally purchase, possess or engage in trafficking of narcotics commonly take, or cause to be taken, photographs/videos of themselves, their associates, their property, their drugs or their firearms, and usually maintain these photographs/videos in electronic storage mediums, including cellular camera telephones.

(c)     Cellular telephones frequently have voice mail and telephone directory features, as well as methods to learn the telephone number associated with each cellular telephone.   Cellular telephones also typically contains records of recent call activity, both incoming and outgoing calls, and lists of stored telephone numbers and other identifying information, such as names.

(d)     Cellular telephones typically have voice mail and/or text messaging features which permit the cellular telephone user to send and receive voice mail and/or text messages.   Voice mail and text messages are typically stored on the computer network of the provider of the cellular telephone's telephone service, which network is external to the cellular telephone.   Sent and received messages may also be stored on the cellular telephone itself.

(e)     Cellular telephones with camera functions permit the cellular telephone user to take photographs and/or videos that are stored on the cellular telephone itself.

(f)     The information described above usually remains accessible in the cellular telephone's memory card even if the cellular telephone has lost all battery power, or has not been used for an extended period of time.

## MANNER OF EXECUTION

18.     Because this warrant seeks only permission to examine devices already in the possession of law enforcement authorities, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

19.     Based on the above, and upon my training and experience, I believe that probable cause exists to believe that the **Subject Cell Phone** contains information that constitutes records, fruits, instrumentalities, and evidence of a crime, to wit, violations of 21 U.S.C. §§ 841(a)(1) (possession of a controlled substance with intent to distribute) and 18 U.S.C. § 924(c)(1)(A)(i) (carrying a firearm during and in relation to, and possession of a firearm in furtherance of, a drug trafficking crime), including the specific information and data set forth in Attachment B, Schedule of Items to be Seized. Accordingly, it is respectfully requested that the Court issue a warrant authorizing law enforcement officers to search the **Subject Cell Phone**, as described in Attachment A, for evidence of the above violations, as set forth in Attachment B, Schedule of Items to be Seized.

S/A Stacey L. Hull
STACEY L. HULL
Special Agent
ATF

Subscribed and sworn to before me this
21  day of June, 2017.

HONORABLE MARIAN W. PAYSON
United States Magistrate Judge
Western District of New York

8